3:21-MJ-2025
FILED
JUL 23 2021
Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, Wesley Leatham, a Special Agent with the Federal Bureau of Investigations ("FBI"), being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, an electronic device, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2009. I am an "Investigative or Law Enforcement Officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. My primary duties and responsibilities involve the investigation of violations of federal law including violent crime as found in Title 18 of the United States Code, and the Controlled Substances Act as found in Title 21 of the United States Code. I am currently assigned to the Knoxville Field Office of the FBI and am assigned to the Violent Crime Squad/Safe Streets Task Force. During my tenure as an FBI Special Agent, I have investigated numerous crimes including, but not limited to, bank robbery, carjacking, violent gangs and organized crime, kidnapping, and fugitive investigations. More specifically, I have conducted physical surveillance, executed search warrants, analyzed phone and internet records, and arrested criminal suspects. I have also spoken to confidential human sources, suspects, defendants, witnesses, and other experienced investigators concerning

the methods and practices of the criminal element. I have received training and have experience in interviewing and interrogation techniques, arrest procedures, evidence collection, search and seizure, search warrant applications, and various other crimes and investigative techniques. Prior to joining the FBI, I was a State Trooper with the Utah Highway Patrol for approximately nine (9) years, and have over twenty-one (21) years of experience as a law enforcement officer.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The property to be searched is:

  a. Phone recovered from a residence that Alexander James Thomas was arrested from, further described below:

   i. Black Motorola Android Cell Phone ("TARGET DEVICE"). The TARGET DEVICE is in FBI Custody and currently located in a secure law enforcement facility in the Eastern District of Tennessee. FBI received the cell phone from state law enforcement on or about February 9, 2021.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On or about January 26, 2021, in the Eastern District of Tennessee, Federal United States Marshals, along with state and local law enforcement officers attempted to serve an arrest warrant on Alexander James Thomas ("THOMAS") at a home in Knoxville. The arrest warrant stemmed from charges in New York. Law enforcement officers repeatedly banged on the door of the home, announced that they were law enforcement, and then after opening the

2

door, attempted to enter the home. Two United States Marshals attempted to enter the home first. The first Marshal was carrying a shield, while the second Marshal had a rifle. As they approached the open front door, the Marshal carrying a rifle saw THOMAS standing with a handgun in his hand pointing the handgun towards the Marshals. The Marshal carrying the shield was able to see a handgun in the hand of THOMAS through a window in the shield. The Marshal with the rifle opened fire but did not strike THOMAS. THOMAS fled into a back area of the home and the Marshals retreated from the dangerous situation to a perimeter around the home. Eventually, after a considerable amount of time had passed, THOMAS exited the home and was arrested.

7. Before THOMAS was arrested, after the initial confrontation, and while he was still inside the house, THOMAS filmed and posted several videos to a social media platform stating that law enforcement wanted him to come outside, and that they had shot at him. THOMAS was seen in these videos holding a handgun and occasionally pointing the handgun at the camera. A screenshot is shown below:



3

8.  After THOMAS was arrested, law enforcement searched the house, pursuant to a search warrant that authorized the seizure of cell phones, among other items, and found a loaded handgun inside the house. Law enforcement also found a large amount of powder that proved to be, after a lab test, at least 400 grams of a mixture and substance that contained fentanyl, along with scales, probable cutting agent, and small plastic bags. The handgun found in the home appeared to match the handgun THOMAS was holding in the videos he posted to social media. At least one round of 9mm ammunition, found in the handgun, was not manufactured in the state of Tennessee and thus moved in interstate commerce.

9.  The TARGET DEVICE was found inside the house as well. It was the only cell phone discovered in the house.

10. Based on my training and experience, I know that drug traffickers commonly use their cellphones to conduct their drug trafficking business. Drug traffickers communicate with potential suppliers, customers, and co-conspirators about the day to day to operations. Moreover, items on cell phones other than communications frequently prove to contain admissible evidence establishing possession and use of a particular device, including photographs, videos, contact lists, location data, and other information about a drug trafficker. In this case, we know that THOMAS used a cell phone to post videos regarding his standoff with law enforcement to a social media site during the standoff.

## TECHNICAL TERMS

11. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

4

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

5

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets,

6

and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

12. Based on my training, experience, and research, I believe that the TARGET DEVICE has capabilities that allows it to serve as a wireless telephone, digital camera, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

17. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

SA WESLEY LEATHAM
FBI

Subscribed and sworn to before me
on March 4, 2021

H. BRUCE GUYTON
UNITED STATES MAGISTRATE JUDGE

8